UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

JAMES SHILLING,

        Plaintiff,

v.

JACKIE CRAWFORD, JAMES SCHOMIG, CHARLES McBURNEY, WILLIAM KULOLOIA, MARTHA SIMS, CHERYL BURSON, CLARENCE KING, DAVE CASALEGGIO, GARY FRIEDMAN, HAROLD CLARKE, JOSEPH LEHMAN, JAMES THATCHER, DEAN MASON, DAVID BAILEY, JAMES MILLER, and ETHAN EARLEY,

        Defendants.

2:05-0889-PMP-GWF

**ORDER**

Presently before this Court is Defendant Gary Friedman's ("Friedman") Motion to Dismiss (Doc. #27) filed on January 9, 2006. Plaintiff filed a Response (Doc. #39) on January 31, 2006. Friedman filed a Reply (Doc. #42) on February 13, 2006.

**I.     BACKGROUND**

Plaintiff is a state of Washington prisoner, currently housed in Washington. (Compl. [Doc. #9] at 1.) From May 17, 2003 to November 19, 2004 Plaintiff was housed as a prisoner at High Desert State Prison ("High Desert") in Indian Springs, Nevada as part of a bed sharing program between Washington and Nevada. (Id.) Plaintiff is an Orthodox Jew, who consumes only kosher food as an essential tenet of his religion. (Id. at 3.)

Friedman is a resident of Washington and is President of Congregation Pidyom Shevuyim, N.A., of which Jewish Prison Services International ("JPSI") is a subsidiary. (Mot. to Dismiss, Ex. 1.) In the Complaint, Plaintiff describes Friedman as the Nevada/Washington Department of Corrections Jewish Religious Advisor. (Id. at 2b.) JPSI contracts with the Washington Department of Corrections for services on essential Jewish practices. (Id.) Neither Friedman, Congregation Pidyom Shevuyim, or JPSI has had or currently has a similar contract with Nevada. (Mot. to Dismiss, Ex. 2.) Under the original contract, Congregation Pidyon Shevuyim was to "provide religious training on essential Jewish religious practices to [Washington] Department of Corrections' offenders who request [the] service. The services will include religious instruction and assistance with Jewish problems in all prisons located in Washington State." (Id.)

In June 2003, Congregation Pidyon Shevuyim and the Washington Department of Corrections amended the contract to provide as follows:

> The Contractor shall provide religious training on essential Jewish religious practices to Department of Corrections offenders who request this service. The services will include religious instruction and assistance with Jewish problems in all prisons located in Washington State. Services will be open to all offenders, however, the Jewish authorities will determine who can participate in liturgical related activities.

(Mot. to Dismiss, Ex. 4.) Per the contract, the Washington Department of Corrections agrees to pay Friedman only for reimbursement of allowable expenses. (Mot. to Dismiss, Ex. 2.) The Washington Department of Corrections does not otherwise compensate Friedman. (Id.)

///
///
///
///

With regard to liability, the contract states:

CONTRACTOR NOT EMPLOYEE OF DEPARTMENT - The Contractor, its employees or agents performing under this Contract Agreement are not employees or agent of the Department. The Contractor will not hold himself/herself out as, nor claim to be, an officer or employee of the Department or of the state of Washington by reason hereof . . .

(Id. (emphasis in original).) With regard to possible discriminatory actions, the contract provides that "[t]he Contractor shall not, on grounds of race, color, sex, religion, national origin, creed, marital status, age, or the presence of any sensory, mental or physical handicap . . . [d]eny an individual any services or other benefits provided under this Contract Agreement." (Id.) In the event of non-compliance with non-discrimination requirements, "the Contract Agreement may be rescinded, cancelled, or terminated, in whole or in part, and the Contractor may be declared ineligible for further contracts with the Department." (Id.)

Upon his arrival at High Desert, Plaintiff requested High Desert provide him with a kosher diet, fast bags for religious holidays observed, as well as access to religious services. (Compl. at 3.) Plaintiff alleges his request was approved, however he was never given a kosher meal. (Id.)

As a result, Plaintiff filed a series of grievances, requesting he be provided with kosher meals. (Id.) Plaintiff alleges Nevada Department of Corrections personnel, including High Desert's chaplain, consulted with Friedman regarding the decision of whether to provide kosher meals to Plaintiff. (Id. at 5.) Plaintiff alleges that Friedman advised them that "[i]t was Jewish Contract Services policy, and therefore the prison's policy, to only provide these items, and diet, to inmates who were born Jewish, as prison is not a place for conversion." (Id.)

On October 3, 2006, Plaintiff filed suit in the Court alleging violation of his First Amendment right to free exercise of religion (claim 1) and violation of his equal protection

3

1  rights under the Fourteenth Amendment (claims 2, 3).  Plaintiff asserts his claim under 42
2  U.S.C. § 1983.
3        Friedman now moves the Court to dismiss Plaintiff's claims against him for
4  failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  First, Friedman
5  argues that as a private individual he did not act under the color of state law, and therefore
6  Plaintiff's claims against him should be dismissed.  Specifically, Friedman argues that the
7  Complaint alleges that he served in an advisory capacity to the Nevada Department of
8  Corrections, and as such he could not be acting under the color of law.  Alternatively,
9  Friedman argues that even if prison authorities used JPSI's standards in denying Plaintiff
10 kosher means, that does not make Friedman a state actor.  Plaintiff responds that the Court
11 should deny Friedman's motion.  Plaintiff argues that Friedman acted under the color of
12 state law per his contract between the Washington Department of Corrections and JPSI.
13 Plaintiff argues that although JPSI formally employs Friedman, his work is subject to
14 control by the Department of Corrections, therefore both organizations are Friedman's
15 employer.  Furthermore, Plaintiff argues that under the JPSI contract, Friedman was sworn
16 to follow all federal and state laws concerning employment practices and his alleged
17 discriminatory practices breached those laws.  Alternatively, Plaintiff requests the Court
18 defer ruling on the present matter and allow for continued discovery in the interest of
19 justice.
20 **II.     LEGAL STANDARD**
21       In considering a motion to dismiss, "all well-pleaded allegations of material fact
22 are taken as true and construed in a light most favorable to the non-moving party."  Wyler
23 Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation
24 omitted).  However, the Court does not necessarily assume the truth of legal conclusions
25 merely because they are cast in the form of factual allegations in Plaintiff's Complaint.  See
26 Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).  There is a strong

1   presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco
2   Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). The issue is not whether
3   Plaintiff ultimately will prevail, but whether he may offer evidence in support of his claims.
4   See id. at 249 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Consequently, the
5   Court may not grant a motion to dismiss for failure to state a claim "unless it appears
6   beyond doubt that the Trustee can prove no set of facts in support of his claim which would
7   entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hicks v.
8   Small, 69 F.3d 967, 969 (9th Cir. 1995).

The liberal rules of notice pleading set forth in the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts supporting his claim. See Yamaguchi v. United States Dep't of the Air Force, 109 F.3d 1475, 1481 (9th Cir. 1997) (quoting Conley v. Gibson, 355 U.S. at 47). All the Rules require is a "short and plain statement" that adequately gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Yamaguchi, 109 F.3d at 1481 (citations and internal quotations omitted). Therefore, a plaintiff merely must plead sufficiently to "establish a basis for judgment against the defendant." Id. at 1481 (citation omitted). Further, a claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. See United States v. Howell, 318 F.2d 162, 166 (9th Cir. 1963).

**III.   DISCUSSION**

Title 42 U.S.C. § 1983 provides:

> [e]very person who, under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, the plaintiff must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of

5

1  state law." Gritchen v. Collier, 254 F.3d 807, 812 (9th Cir. 2001). That the defendant act
2  under color of state law is "'a jurisdictional requisite for a § 1983 action.'" Id. (quoting
3  West v. Atkins, 487 U.S. 42, 46 (1988)). Similarly, a plaintiff basing a cause of action on
4  alleged constitutional violations must show that the "actions complained of are 'fairly
5  attributable' to the government." Morse v. N. Coast Opportunities, Inc., 118 F.3d 1338,
6  1340 (9th Cir. 1997).

7  Plaintiff's action is against a private individual in his individual capacity. In
8  determining whether a private actor acts under color of state law for § 1983 purposes, the
9  ultimate issue is whether the alleged infringement of federal rights is fairly attributable to
10 the government even though committed by private actors. Sutton v. Providence St. Joseph
11 Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999). An alleged violation is fairly attributable to
12 the government when (1) it results from a governmental policy and (2) the defendant is a
13 person who fairly may be said to be a governmental actor. Id. An action is said to have
14 results from a governmental policy where the deprivation is "'caused by the exercise of
15 some right or privilege created by the [government] or a rule of conduct imposed by the
16 [government].'" Id. (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)).
17 With regard to the second prong, an individual may be a governmental actor "because he
18 has acted together with or has obtained significant aid from state officials, or because his
19 conduct is otherwise chargeable to the State." Lugar, 457 U.S. at 937. "Acts of such
20 private contractors do not become acts of the government by reason of their significant or
21 even total engagement in performing public contracts." Rendell-Baker v. Kohn, 457 U.S.
22 830, 841 (1982).

23 A court begins with the presumption that private conduct does not constitute
24 governmental action. Id. The courts have identified at least four tests to determine whether
25 a private entity acts under the color of state law: (1) the private entity engages in conduct
26 that is traditionally exclusively reserved to the state ("Public Function Test"); (2) the private

6

1  entity acts jointly with the state ("Joint Action Test"); (3) the private entity acts under state
2  compulsion or encouragement ("State Compulsion Test"); and (4) the private entity engages
3  in conduct in which there is a sufficient nexus between the conduct and government
4  regulation ("Government Nexus Test").  Johnson v. Knowles, 113 F.3d 1114, 1118 (9th Cir.
5  1997) (citing Collins v. Womancare, 878 F.2d 1145, 1148-49 (9th Cir. 1989)).  An
6  additional inquiry is whether there is the "pervasive entwinement" of a private organization
7  with a public institution.  Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n, 531
8  U.S. 288, 298-99 (2001).  In Brentwood, the Court held that "[w]hen, therefore, the relevant
9  facts show pervasive entwinement to the point of largely overlapping identity, the
10  implication of state action is not affected by pointing out that the facts might not loom large
11  under a different test."  Id. at 303.  Although these tests are helpful in determining state
12  involvement, "'there is no specific formula for defining state action.'"  Sutton, 192 F.3d at
13  836 (quoting Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir. 1983) (citation and internal
14  quotation marks omitted)).  Rather, a court should look to whether a sufficiently close nexus
15  between the state and the challenged conduct exists to fairly attribute the conduct to the
16  state.  Id.  The inquiry is fact specific.  Id.

17         Plaintiff argues that Friedman acted under the color of state law because a
18  sufficiently close nexus exists between Friedman's actions and the Washington Department
19  of Correction's policies regarding whether to allow Plaintiff access to kosher meals, and
20  Jewish services.  Plaintiff argues the nexus between Friedman's actions and state is
21  demonstrated by Friedman's influence over the Department of Correction's policy decision
22  to deny him access to certain religious services.  Finally, Plaintiff argues that because
23  Friedman is under contract to provide religious services to inmates controlled by the
24  Department of Corrections, there exists a sufficiently close nexus between Friedman's
25  actions and the Department of Correction's policies.

26         Under the Government Nexus Test, a private entity acts under color of state law

if "'there is a sufficiently close nexus between the State [and] the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). "'The mere fact that a [private actor] is subject to state regulation does not by itself convert its action into that of the state for purposes of the Fourteenth Amendment.'" Johnson, 113 F.3d at 1120 (quoting Jackson, 419 U.S. at 350). Additionally, employment by the state is an insufficient basis for establishing state action. Polk County v. Dodson, 454 U.S. 312, 324 (1981); Montano v. Hedgepeth, 120 F.3d 844, 849 (8th Cir. 1997) ("even when an officer of the state is named as a defendant in a § 1983 lawsuit, we must refrain from automatically assuming the existence of state action")).

The United States Court of Appeals for the Ninth Circuit has not addressed whether prison chaplains or clergy providing services to inmates are state actors under § 1983. However, the United States Court of Appeals for the Eighth Circuit has held that the state cannot be held accountable for conduct undertaken by a prison chaplain acting purely in a clerical capacity. Montano, 120 F.3d at 850. In Montano, the plaintiff, an inmate in state prison, was a Messianic Jew meaning that he was a Christian who studies from a Jewish perspective. Id. at 846. The plaintiff attended Protestant Christian ceremonies, but the prison's chaplain subsequently denied him access to the group, because he was a Messianic Jew and not a full Protestant. Id. at 847. The plaintiff filed suit under § 1983 alleging the chaplain had violated his right to free exercise. Id. at 848. The Eighth Circuit held "that a prison chaplain, even if a full-time state employee, is not a state actor when he engages in inherently ecclesiastical functions (that is, when he performs spiritual duties as a leader in his church)." Id. at 851. As the Court noted, "interpretation and implementation of church doctrine do not constitute state action." Id. However, the Court noted that the administrative and managerial tasks the chaplain was required to perform "would clearly be fairly attributable to the state." Id.

Viewing all evidence in favor of Plaintiff, the non-moving party, there is not a sufficient nexus between Friedman and either Washington or Nevada such that Friedman's actions may be fairly treated as the states' actions. First, Friedman's actions were ecclesiastical in nature, and therefore such action cannot be made under the color of state law. See Montano, 120 F.3d at 850. Plaintiff alleges Friedman provided advice as to whether Plaintiff should be considered Jewish. He does not allege that Friedman made the administrative or managerial decision to deny Plaintiff access to kosher meals and other Judaic services. Therefore, Friedman's determination as to who may participate in Jewish ceremonies by virtue of their religion was not made under the color of state law, but as an implementation and interpretation of Jewish faith. Although Friedman's administrative or managerial tasks may constitute actions made under the color of state law, his action as alleged in the present matter was ecclesiastical in nature and therefore not an action made under the color of law.

Furthermore, JPSI contracted with Washington, not Nevada, to provide Judaic services to Jewish inmates. Thus, High Desert's decision to consult with Friedman was not under contract, but a discretionary decision to consult with Friedman regarding his ecclesiastical opinion. That the original contract was with Washington further removes Friedman from Nevada's alleged decision to deny Plaintiff access to Judaic services. Finally, Friedman's contract or employment by the state along is insufficient to establish state action. Polk County, 454 U.S. at 324. For these reasons, there is not sufficient nexus between Friedman's action and the state, therefore the Court will grant Friedman's motion to dismiss.[1]

---

[1] Plaintiff does not raise any of the other three tests, but a cursory examination suggests none of the other tests would lead to a state action finding. First, advising on religious matter is not conduct traditionally reserved for the states, therefore the Public Function test is inapplicable. Second, Plaintiff does not allege Nevada or Washington compelled Friedman to act, and therefore the State Compulsion Test would be inapplicable. Third, there is no evidence Friedman acted jointly with the state in their

## IV.     CONCLUSION

IT IS THEREFORE ORDERED that Defendant Gary Friedman's Motion to Dismiss (Doc. #27) is hereby GRANTED.

DATE:  June 12, 2006

_____
PHILIP M. PRO
Chief United States District Judge

---

alleged decision to deny Plaintiff access to Judaic services, therefore the Joint Action test is inapplicable.