UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

JAMES SHILLING,

        Plaintiff,

v.

JACKIE CRAWFORD, JAMES
SCHOMIG, CHARLES McBURNEY,
WILLIAM KUKOLOIA, MARTHA
SIMS, CHERYL BURSON, CLARENCE
KING, DAVE CASALEGGIO, GARY
FRIEDMAN, HAROLD CLARKE,
JOSEPH LEHMAN, JAMES
THATCHER, DEAN MASON, DAVID
BAILEY, JAMES MILLER, and ETHAN
EARLEY,

        Defendants.

2:05-CV-00889-PMP-GWF

**O R D E R**

I.      **BACKGROUND**

      On May 13, 2003, the Washington Department of Corrections ("Washington

DOC") and Nevada Department of Corrections ("Nevada DOC") entered into a contract

("Housing Contract") wherein Nevada DOC agreed to house Washington inmates at its

facilities.  (Washington DOC Defs.' Mot. for Summ. J. [Doc. #144], Ex. 2, Attach. A.)

Each party had the right to terminate the Housing Contract with thirty days written notice.

(Id.)  In addition, the parties agreed that upon demand by either party, Washington inmates

could be transferred back to Washington DOC's custody.  (Id.)  Pursuant to the Housing

Contract's terms, Washington DOC agreed to send a Contract Monitor and other staff to act

as a liaison with the Nevada DOC Contract Monitor and to monitor Nevada DOC's performance under the contract. (Id.)

Under the terms of the Housing Contract, Nevada DOC was to handle all Washington inmates' grievances consistent with Nevada DOC procedures while Washington inmates were incarcerated in Nevada facilities. (Washington DOC Defs.' Mot. for Summ. J., Ex. 2.) The Nevada DOC Grievance System consists of one informal and two formal levels. ( Decl. of James Shilling ["Shilling Decl."] and Exs. attached thereto [Doc. #174], Ex. 3.) An inmate first must submit an informal grievance and may appeal the informal grievance decision to the next level of review if the inmate disagrees with the decision. (Id.) The next level of review is called First Level Grievance and this level commences the "formal" grievance process. (Id.) If an inmate is dissatisfied with the First Level Grievance decision, he or she may appeal by filing a Second Level Grievance, which is the final level. (Id.) The Second Level Grievance decision constitutes Nevada DOC's final disposition of the grievance. (Id.)

Plaintiff James Shilling is a Washington State prisoner currently housed in the Washington State Reformatory in Monroe, Washington. (Washington DOC Defs.' Mot. for Summ. J., Ex. 1, Attach. A; Shilling Decl. and Exs. attached thereto.) On May 17, 2003, Plaintiff was transferred to High Desert State Prison ("HDSP") in Indian Springs, Nevada under the Housing Contract's terms. (Washington DOC Defs.' Mot. for Summ. J., Ex. 1, Attach. A, Ex. 2.) Plaintiff was transferred back to Washington on November 19, 2004. (Id., Ex. 1, Attach. A.)

Under Washington DOC policy, inmates housed in Washington facilities who want to receive religious accommodations, including religious diets, must fill out a religious preference form and a religious diet request form and submit the forms to the prison chaplain. (Id., Ex. 6, Attach. A.) On February 18, 1993, Plaintiff completed and submitted a religious preference form, marking his religious preferences as Catholic and Protestant.

2

(Id., Ex. 7, Attach. A.)  On May 9, 1993, Plaintiff completed and submitted another religious preference form indicating his religious preference was Lutheran.  (Id., Attach. B.)  On April 11, 1997, Plaintiff filled out another religious preference form stating that his religious preference was Buddhist.  (Id., Attach. C.)  Washington DOC Defendants state this was the last religious preference form Plaintiff submitted prior to his transfer to HDSP in 2003.  (Washington DOC Defs.' Mot. for Summ. J. at 4.)  Plaintiff's exhibits, however, contain a copy of a religious preference form bearing a date of July 17, 1997, wherein Plaintiff indicated his religious preference was Judaism.  (Shilling Decl. and Exs. attached thereto, Ex. 58.)  Nowhere on Plaintiff's form, however, did Plaintiff request a religious diet.  (Id.)  Upon transferring back to Washington in November 2004, Plaintiff completed another religious preference form declaring himself an Orthodox Jew.  (Washington DOC Defs.' Mot. for Summ. J., Ex. 7, Attach D.)

Shortly after Plaintiff arrived at HDSP in May 2003, he completed two Inmate Request Forms directed to the HDSP Chaplain and Kitchen Supervisor requesting a kosher diet.  (Shilling Decl. and Exs. attached thereto, Ex. 22.)  The record contains no evidence the chaplain or kitchen services supervisor answered Plaintiff's request.  Plaintiff did not file another request or grievance until November 20, 2003, when he directed another Inmate Request form to the "Jewish Chaplain" seeking a kosher diet.  (Id.)  On December 12, 2003, Plaintiff filled out another Inmate Request form addressed to the Inmate Kitchen Supervisor requesting a kosher diet and requesting a response.  (Id.)

On December 22, 2003, Plaintiff submitted an informal grievance stating he was being denied kosher food consistent with his Jewish beliefs and practices.  (Id., Ex. 12.)  On or about December 30, 2003, Defendant Casaleggio, the HDSP Prison Chaplain, interviewed Plaintiff to discuss Plaintiff's request for a religious diet.  (Nevada Defs.' Mot. for Summ. J., Ex. C, Aff. of Father Dave Casaleggio.)

///

Nevada DOC procedures regarding religious diet participation provide that the chaplain must evaluate whether an inmate is eligible for a religious diet by considering a "hereditary or social connection to the religious practice, or substantial philosophical understanding of the religion and its dietary practices." (Shilling Decl. and Exs. attached thereto, Ex. 21-C at 2.) Nevada DOC procedures regarding inmates' access to religious programs further provide that "[s]ome religions or Faith Groups require proof of ethnicity, parentage, conversion, or membership before an inmate is recognized by the church authority. Inmates who cannot produce the required proof will not be permitted to participate in holiday or Holy Day events or special meals of that religion or Faith Group." (Id., Ex. 21-B at 2.)

Under these procedures, as chaplain, Casaleggio is responsible for interviewing inmates who request religious diets to determine if they qualify for such diets. (Nevada Defs.' Mot. for Summ. J., Ex. C, Aff. of Father Dave Casaleggio.) During the interview, Casaleggio asks the inmate about his religious history and current religious beliefs and practices and makes a determination as to whether the inmate is entitled to a religious diet based on the inmate's responses. (Id.) Casaleggio initially approved Plaintiff to receive a religious diet and prepared a memorandum to the Culinary Food Manager notifying him of Plaintiff's dietary request. (Id.; Nevada Defs.' Mot. for Summ. J., Ex. D.)

However, to understand the requirements of the Orthodox Jewish faith, Casaleggio contacted Defendant Gary Friedman ("Friedman"), President of Pidyon Shevuyim, N.A., who contracted with Washington DOC to provide Jewish services to inmates housed in Washington. (Nevada Defs.' Mot. for Summ. J., Ex. C, Aff. of Father Dave Casaleggio; see also Mot. to Dismiss by Def. Gary Friedman [Doc. #27], Decl. of Gary Friedman.) After learning more about the Orthodox Jewish faith and its membership requirements, Casaleggio conducted a second interview with Plaintiff during which he learned that Plaintiff was not born of a Jewish mother and had neither initiated nor

4

completed the conversion process to become an Orthodox Jew. (Nevada Defs.' Mot. for Summ. J., Ex. C, Aff. of Father Dave Casaleggio.) Consequently, Casaleggio withdrew his approval for Plaintiff's kosher diet. (Id.)

On February 19, 2004, Plaintiff received a response to his informal grievance, signed by caseworker Defendant Burson and grievance coordinator Defendant Sims stating that Plaintiff's request for a religious diet was "passed on to the culinary food manager" and therefore the grievance was "resolved." (Shilling Decl. and Exs. attached thereto, Ex. 12.) That same day, Plaintiff appealed the informal grievance response and filed a First Level Grievance claiming that he still was not receiving a kosher diet consistent with his religious beliefs. (Id.) On April 13, 2004, Plaintiff received a response to his First Level Grievance explaining that HDSP does not offer kosher diets, but that Ely State Prison ("ESP") provides kosher diets to inmates. (Id.) That same day, Plaintiff appealed the First Level Grievance and filed a Second Level Grievance arguing that as a "Receiving Institution," HDSP should provide religious meals to offenders requiring such meals under their religious practices and beliefs. (Id.) In response to Plaintiff's Second Level Grievance, Plaintiff was told that he had been submitted to ESP for a transfer to accommodate his request for a kosher diet. (Id.) According to Plaintiff, ESP is a higher security facility than HDSP. (Nevada Defs.' Mot. for Summ. J., Ex. A, Shilling Dep. at 44.)

On or about April 4, 2004, Washington DOC Defendants Earley and Miller were informed Plaintiff was an Orthodox Jew requesting a kosher diet. (Washington DOC Defs.' Mot. for Summ. J., Ex. 3, Decl. of James Miller ["Miller Decl."]; Ex. 5, Decl. of Ethan Earley ["Earley Decl."].) Earley and Miller are both Washington DOC employees who worked on-site at HDSP to resolve issues regarding inmates who had transferred from Washington under the Housing Contract. (Id., Ex. 3, Miller Decl.; Ex. 5, Earley Decl.) Soon after receiving information regarding Plaintiff's situation, Miller and Earley met with Plaintiff to discuss his request for a kosher diet and offered to have Plaintiff transferred to

ESP to accommodate his request. (Id., Ex. 3, Miller Decl., Ex. 5, Earley Decl.) Because

Plaintiff stated he did not want to go to ESP, Earley and Miller recommended that

Plaintiff's transfer to ESP be cancelled. (Id., Ex. 3, Miller Decl., Ex. 5, Earley Decl.)

Approximately three weeks later, Earley and Washington DOC Defendant David Bailey, the

on-site contract manager at HDSP, conducted another meeting with Plaintiff. (Id., Ex. 4,

Decl. of David Bailey ["Bailey Decl."], Ex. 5, Earley Decl.) Earley and Bailey informed

Plaintiff that HDSP does not offer a kosher diet and that if Plaintiff wanted to pursue

receiving a kosher diet he would have to transfer to ESP because ESP was the only Nevada

facility that had an existing kosher kitchen and could accommodate his request. (Id., Ex. 4,

Bailey Decl.) According to Defendants, Plaintiff reiterated he did not want to go to ESP.

(Id.) Plaintiff also indicates he expressed concerns about transferring to ESP when prison

officials discussed the option with him. (Compl. [Doc. #9] at 5.)

On November 24, 2004, Plaintiff was transferred back to Washington.

(Washington DOC Defs.' Mot. for Summ. J., Ex. 1.) On January 26, 2005, Plaintiff filed a

grievance with the Washington DOC alleging his rights were violated during his

incarceration at HDSP because he did not receive a kosher diet. (Id., Ex. 11, Attach. B.) In

response, the Washington DOC explained to Plaintiff that the issue was "non-grievable"

because the incident occurred at HDSP in Nevada and therefore "should have been

addressed at that time, at that facility." (Id.)

Plaintiff filed suit in this Court under 42 U.S.C. § 1983 against Nevada and

Washington DOC Defendants, alleging they violated his First Amendment free exercise

rights and Fourteenth Amendment equal protection rights. Nevada and Washington DOC

Defendants now move for summary judgment. The parties also have filed various motions

to strike evidence and related filings.

Presently before the Court is Washington DOC Defendants' Motion for Summary

Judgment (Doc. #144), filed on December 4, 2006 by Defendants James Miller ("Miller"),

David Bailey ("Bailey"), and Ethan Earley ("Earley").[1]  Also before the Court is State of Nevada Defendants' Motion for Summary Judgment (Doc. #145), filed on December 4, 2006 by Defendants Jackie Crawford ("Crawford"), James Schomig ("Schomig"), Charles McBurney ("McBurney"), William Kukoloia ("Kukoloia"), Martha Sims ("Sims"), Cheryl Burson ("Burson"), Clarence King ("King"), James Miller ("Miller"), and Father Dave Cassaleggio ("Cassaleggio").  On March 9, 2007, Plaintiff filed a Response to Defendants' Motion for Summary Judgment (Doc. #165).  Washington DOC Defendants filed a Reply (Doc. #168) on March 19, 2007.  State of Nevada Defendants filed a Reply (Doc. #169) on March 21, 2007.

Also before this Court is Plaintiff's Motion to Enlarge Time to Respond to Defendants' Motions for Summary Judgment (Doc. #149), filed on December 18, 2006. Defendants responded but did not oppose the motion (Doc. #150).

Also before this Court is Plaintiff's Motion to Strike Pursuant to F.R.C.P. 56(e) Defendants' Exhibits and Testimony in Support of Their Motions for Summary Judgment (Doc. #166), filed on March 13, 2007.  On March 19, 2007, Washington DOC Defendants filed a Response to Plaintiff's Motion to Strike (Doc. #167).  On March 29, 2007, State of Nevada Defendants filed an Opposition to Plaintiff's Motion to Strike (Doc. #170). Plaintiff filed Replies on March 30, 2007 (Doc. #171) and April 16, 2007 (Doc. #172).

Also before the Court is State of Nevada Defendants' Motion to Strike Plaintiff's Response to Defendants' Reply (Doc. #162), filed on February 5, 2007.  Plaintiff did not file a response.

Also before the Court is Nevada Defendants' Notice to Court Regarding Implementation of Kosher Foods Identification Program (Doc. #175), filed on June 13,

---

[1] The Court previously dismissed Plaintiff's claims against Washington Defendants Richard Clarke (whose correct name is Harold) ("Clarke"), Joseph Lehman ("Lehman"), Dean Mason ("Mason"), James Thatcher ("Thatcher"), and Gary Friedman ("Friedman").  (Docs. #97, #101.)

7

2007, and Plaintiff's Motion to Strike Nevada Defendants' Notice to Court Regarding Implementation of Kosher Foods Identification Program (Doc. #177), filed on June 29, 2007. Plaintiff's support of the Motion is included in Plaintiff's Notice to Court of Supplement to Exhibit 8 (Doc. #176). On July 16, 2007, State of Nevada Defendants filed an Opposition to Plaintiff's Motion to Strike (Doc. #178). Plaintiff filed a Reply (Doc. #180) on July 30, 2007.

## II.    MOTIONS TO STRIKE

Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Federal Rule of Civil Procedure 7(a) "defines 'pleadings' as a complaint and answer; a reply to a counterclaim; an answer to a cross-claim; and a third party complaint and answer." Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005). Consequently, the Federal Rules' plain language provides no basis for striking affidavits or exhibits offered in support of a motion for summary judgment or other filings as these documents are not "pleadings." However, to the extent an affidavit or exhibit is defective and therefore inadmissible, or a filing not permitted, the court may disregard the evidence in ruling on the motion. See Rossi v. Trans World Airlines, Inc., 507 F.2d 404, 406 (9th Cir. 1974) (affirming the district court's decision to disregard an affidavit containing inadmissible hearsay). Accordingly, the Court will deny the parties' motion to strike as such, but will consider the parties' arguments to determine whether the Court will disregard the challenged evidence and filings.

### A.  Motion to Strike Plaintiff's Sur-Reply (Doc. #162)

After Washington DOC Defendants and Nevada Defendants filed their respective motions for summary judgment, they each filed a Joinder (Docs. #146, #147) to the other's motion for summary judgment. Plaintiff opposed Defendants' Joinders (Doc. #152) on January 4, 2006. Nevada Defendants subsequently filed a Reply (Doc. #158) to Plaintiff's

Opposition.  Without leave of the Court, Plaintiff then filed a Sur-Reply (Doc. #160) to Nevada Defendants' Reply.  In response, Nevada Defendants filed a motion to Strike Plaintiff's Sur-Reply under Federal Rule of Civil Procedure 7(b) and Local Rule 7-2 (Doc. #162).  Having read and considered the parties' arguments, the Court will disregard Plaintiff's Sur-Reply because Plaintiff filed the Sur-Reply without leave of the Court.

## B.  Motion to Strike Defendants' Exhibits

Plaintiff moves to strike certain exhibits presented in conjunction with Defendants' respective motions for summary judgment.  Plaintiff argues that specific exhibits and/or affidavits are redundant, immaterial, impertinent, or scandalous.  Plaintiff alleges some of the exhibits have been altered or forged, were not in effect at the time Plaintiff was incarcerated in Nevada, and are "clearly self-serving to Defendant's [sic] Motions."  (Pl.'s Mot. to Strike Pursuant to F.R.C.P. 56(e) W.A. & N.V. Defs.' Exs./Test. in Summ. J. Mot. [Doc. #166] at 2.)  Defendants respond they appropriately offered their exhibits and therefore the Court should deny Plaintiff's motion to strike.

### 1.  Washington DOC Defendants' Evidence

Plaintiff argues Attachment A to Exhibit 1 is inflammatory and irrelevant to this action because the attachment contains his criminal history.  Attachment A is a copy of Plaintiff's Legal Face Sheet in the Offender Based Tracking System used by the Washington Department of Corrections.  In addition to showing Plaintiff's criminal history, Attachment A contains information regarding Plaintiff's current location, past transfers, custody, birth date, sentence, infractions and grievances.  Because this information is neither inflammatory nor irrelevant, the Court will not disregard Attachment A to Exhibit 1.

Plaintiff argues the Court should strike pages 62-87 of Attachment A to Exhibit 2 as immaterial.  Attachment A to Exhibit 2 is a copy of the contract between Washington DOC and Nevada DOC for the housing of Washington inmates in Nevada DOC facilities.  Plaintiff objects to portions of the contract concerning the Offender Health Plan and the

reporting of emergencies because these portions of the contract do not relate to his claims. While not every section of the contract directly pertains to Plaintiff's claims, it is appropriate to offer the entire contract into evidence. The Court therefore will not disregard the contract portions to which Plaintiff objects.

Next, Plaintiff contends the Court should strike Exhibit 8, the Declaration of Thomas G. Bohon, Jr. ("Bohon"), because Bohon declares that he has attached a true and accurate copy of Plaintiff's appeal of the decision to be transferred out of state. Plaintiff argues Bohon's statement is misleading and factually untrue because additional documents exist with respect to Plaintiff's grievance history that Bohon did not attach to his declaration. Defendants respond that they attached all documents in their possession relevant to Plaintiff's grievance history to Exhibit 8 and the fact Plaintiff has offered an additional document regarding his grievance history does not mean the Court must disregard the information contained in Exhibit 8. The Court will not disregard Exhibit 8 because Bohon's declaration is not defective or inadmissible. To the extent Plaintiff has offered additional documentation which creates a genuine issue of material fact, the Court will consider it in determining whether summary judgment is warranted.

Plaintiff moves to strike Attachment A to Exhibit 9, which consists of selected portions of Plaintiff's deposition testimony. Plaintiff contends that because Defendants did not offer a complete copy of Plaintiff's deposition transcript he is prejudiced because his statements may be manipulated and taken out of context. Defendants' decision to offer only relevant excerpts of Plaintiff's deposition testimony is not grounds to disregard the exhibit. Moreover, because the Nevada Defendants attached Plaintiff's entire deposition transcript to their motion for summary judgment, Plaintiff's fears that Washington DOC Defendants will attempt to manipulate his testimony by presenting only portions are unfounded.

///

///

Plaintiff objects to Washington DOC Defendants' Exhibit 10, the Declaration of Gary H. Friedman, because it is scandalous, self-serving, inapposite to a previous declaration by Friedman in this case, and references documents not in Friedman's control. Defendants' Exhibit 10 is not scandalous or inapposite to Friedman's earlier declaration. Instead, Exhibit 10 provides information as to Friedman's understanding of Plaintiff's status as a Jewish inmate under Washington DOC policy. Further, the Federal Rules of Evidence do not require that a declarant have in his control all documents he or she may reference in the declaration. The Court therefore will not disregard Defendants' Exhibit 10.

Finally, Plaintiff urges the Court to strike Exhibit 11 because the Declaration of Devon Schrum ("Schrum") and the attachments thereto are scandalous and impertinent. Plaintiff argues that Schrum, who is the current Grievance Program Manager at Washington DOC, did not serve in this capacity during Plaintiff's incarceration in Nevada and that Attachments A and B to Schrum's declaration are not complete records of Plaintiff's grievance history. The fact that Schrum did not work as the Grievance Program Manager during Plaintiff's stay in Nevada or that Schrum may not have personal knowledge of all of Plaintiff's grievances do not make Schrum's declaration inadmissible. As the current Grievance Program Manager, Schrum has access to Plaintiff's grievance history, has personal knowledge about the grievance system, and is able to provide information related to Plaintiff's grievances during his entire incarceration. Moreover, in Plaintiff's Reply to Washington DOC's Response to Plaintiff's Motion to Strike (Doc. #171), Plaintiff acknowledges that Defendants "provided plaintiff's complete grievance history spanning his time in the WA. State (DOC) System, where he started his current sentence of incarceration in January 1993 to present day." (Pl.'s Reply to Washington DOC's Resp. to Pl.'s Mot. to Strike at 7.) Thus, Plaintiff's argument that Attachments A and B are incomplete is without merit. The Court therefore will not disregard Defendants' Exhibit 11 and its attachments.

### 2. Nevada Defendants' Evidence

Plaintiff seeks to have Nevada DOC Defendants' Exhibit A, Plaintiff's complete deposition transcript and exhibits thereto, stricken from Defendants' motion for summary judgment. While Plaintiff is not clear as to why Plaintiff wants his deposition testimony stricken, Plaintiff agues the Court should strike the deposition exhibits because they are not authenticated, and are self-serving, inaccurate, fraudulent, and/or inflammatory.

A party may authenticate a deposition in a motion for summary judgment by identifying the name of the deponent and the action and including the reporter's certification that the deposition is a true record of the deponent's testimony. Orr v. Bank of Am., 285 F.3d 764, 774 (9th Cir. 2002). The Court will not disregard Plaintiff's deposition testimony because Defendants properly authenticated the deposition. Exhibit A contains a cover page of the deposition identifying Plaintiff and the action, and the reporter's certification. Further, the Court will not disregard the deposition exhibits because Plaintiff authenticated the exhibits during his deposition and has not demonstrated any of the exhibits are fraudulent, inaccurate, or inflammatory.

Plaintiff argues the Court should strike Defendants' Exhibit C, Defendant Casaleggio's Affidavit, because it is self-serving, refers to Friedman as a "Rabbi," and refers to Nevada DOC policies that were not in effect while Plaintiff was housed in Nevada. The Court will not disregard Exhibit C because none of the grounds Plaintiff raises makes Exhibit C inadmissible. Whether Friedman is a "Rabbi" or a "Chaplain" is immaterial to Plaintiff's claims. In addition, disagreement with an affiant's testimony, without more, is not enough to render the affidavit inadmissible. Whether certain Nevada DOC policies were in effect during Plaintiff's incarceration in Nevada may or may not be a material issue of genuine fact that precludes summary judgment. To the extent Plaintiff is able to produce admissible evidence contradicting Casaleggio's testimony, the Court will consider it in ruling on Defendants' motion for summary judgment.

Plaintiff contends the Court should strike Defendants' Exhibit E, the affidavit of James Stogner ("Stogner"), because it is self-serving and based upon Stogner's interactions at ESP, not HDSP. The Court will not disregard Stogner's affidavit because none of the grounds Plaintiff raises renders Exhibit E inadmissible.

Plaintiff urges the Court to strike Exhibit F because it was not in effect while Plaintiff was in Nevada. Exhibit F is Nevada DOC Administrative Regulation 814 ("AR 814"), which sets out the Inmate Religious Diet Procedure. It is unclear whether AR 814 was in effect during Plaintiff's stay in Nevada. Although Exhibit F bears an effective date of November 15, 2004, Stogner testified in his affidavit that Nevada DOC adopted AR 814 on June 7, 2004. While this apparent divergence may create an issue of fact, it does not render Exhibit F inadmissible. The Court therefore will not disregard Exhibit F in considering Defendants' motion for summary judgment.

Finally, Plaintiff argues the Court should strike Exhibit G, the Affidavit of Gary Long ("Long"), because Plaintiff has produced evidence that contradicts Long's testimony. As Store Manager for all Nevada inmate stores, Long testified that price lists and receipts identify kosher items by placing a "k" next to the item. Long stated that all Nevada Inmate Stores were mandated to use the "k" designation since August 2004 but that some stores, including HDSP, had been using this system to identify kosher items before August 2004. Plaintiff has offered various store receipts from 2003 and one receipt from 2004 that do not identify kosher items with a "k." While Plaintiff's evidence may create an issue of fact, that does not render Defendants' evidence inadmissible. Because Plaintiff has not presented any grounds which would render Exhibit G inadmissible, the Court will not disregard Long's affidavit.

### C. Motion to Strike Defendants' Notice of Additional Testimony

After briefing was completed on Washington DOC and Nevada Defendants' motions for summary judgment, Nevada Defendants filed a Notice to Court Regarding

13

Implementation of Kosher Foods Identification Program ("Defendants' Notice to Court") (Doc. #175) on June 13, 2007.  Plaintiff moves to strike Defendants' Notice to Court (Doc. #177) on June 29, 2007 arguing this document is not permitted under Local Rule 7-2 and Nevada Defendants may not offer further documents in support of their motion for summary judgment.  Defendants respond that the Notice serves only to clarify a factual point and does not constitute additional evidence.

Nevada Defendants' Notice to Court details when HDSP adopted its Kosher Food Identification Program and attaches an exhibit that contains documentary evidence of the date HDSP adopted the program.  (Defs.' Notice to Court, Ex. A.)  This exhibit is dated August 31, 2004.  (Id.)  Thus, this document existed at the time the Nevada Defendants filed their motion for summary judgment.  Because the Nevada Defendants could have included this document in their motion for summary judgment, but did not, the Court will disregard Defendants' Notice to Court.

**III.	MOTIONS FOR SUMMARY JUDGMENT**

Washington DOC Defendants and Nevada Defendants move for summary judgment arguing no genuine issues of material fact exist and Defendants are entitled to judgment as a matter of law.  Specifically, Washington DOC Defendants argue Plaintiff failed to exhaust his administrative remedies; Defendants did not interfere with or burden Plaintiff's religious practices; Defendants did not violate Plaintiff's Fourteenth Amendment rights; offering Plaintiff a transfer to ESP was a reasonable solution to Plaintiff's request to receive a kosher diet; and if any constitutional violations occurred, the Washington DOC Defendants did not personally participate in such violations and, even if they did, Defendants are entitled to qualified immunity.  Nevada Defendants argue Plaintiff has failed to establish a First Amendment violation; Defendants did not violate Plaintiff's Fourteenth Amendment rights; the Eleventh Amendment bars Plaintiff's claims; Defendants are entitled to qualified immunity; Plaintiff has failed to demonstrate certain Defendants

were personally involved in denying Plaintiff's request for a kosher diet; and supervisors cannot be held liable for the acts of subordinates under 42 U.S.C. § 1983.

In response, Plaintiff argues genuine issues of material fact exist, precluding summary judgment because Defendants' "bed sharing" contract was illegal and unconstitutional;[2] Plaintiff properly followed all DOC procedures to obtain a religious diet and exhausted his administrative remedies; the Washington DOC Defendants illegally garnished money out of Plaintiff's Nevada prison account;[3] Plaintiff has stated a claim under 42 U.S.C. § 1983 because each Defendant personally participated in the violation of his constitutional rights while acting under color of state law; Defendants violated his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"); and Defendants are not entitled to qualified immunity.

**A. Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law defines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will

---

[2] Plaintiff's Complaint does not allege the Housing Contract was illegal. Because Plaintiff raises this argument for the first time in his Response to Defendants' motions for summary judgment, the Court will not consider it. See Wasco Prods., Inc. v. Southwall Tech., Inc., 435 F.3d 989, 992 (9th Cir. 2006) (rejecting allegations appearing for the first time in a response to a summary judgment motion and explaining that "summary judgment is not a procedural second chance to flesh out inadequate pleadings") (quotation omitted).

[3] Plaintiff's Complaint does not allege Washington DOC Defendants illegally garnished money out of Plaintiff's Nevada prison account. Because Plaintiff raises this argument for the first time in his Response to Defendants' motions for summary judgment, the Court will not consider it. See Wasco Prods., Inc., 435 F.3d at 992.

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Where a party fails to offer evidence sufficient to establish an element essential to its case, no genuine issue of material fact can exist, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001). All justifiable inferences must be viewed in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

**B. Exhaustion of Administrative Remedies**

Washington DOC Defendants argue Plaintiff failed to exhaust his administrative remedies because his January 26, 2005 grievance was untimely and Plaintiff failed to appeal Washington DOC's determination that the grievance was non-grievable. In response, Plaintiff contends he was not obligated to file a grievance in Washington because he already completed the grievance process in Nevada. Plaintiff claims the reason he filed a grievance in Washington concerning the denial of a kosher diet in Nevada was "to give [Washington] a bite of the apple, to admit culpability, to reprimand staff, to preserve evidence, and to stop any further attempts later presented by defendants, to say plaintiff never Exhausted [sic] all State Remedies [sic]." (Pl.'s Resp. to Defs.' Mot. for Summ. J. [Doc. #165] at 8.)

///
///

Under the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust available administrative remedies before he or she can file a lawsuit in federal court regarding prison conditions. Vaden v. Summerhill, 449 F.3d 1047, 1048 (9th Cir. 2006); 42 U.S.C. § 1997e(a). Congress enacted the PLRA to "reduce the quantity and improve the quality of prisoner suits" and to "afford[] corrections officials an opportunity to address complaints internally." Porter v. Nussle, 534 U.S. 516, 524-25 (2002). Mandatory exhaustion also filters out frivolous claims and helps to establish a clear record of the controversy's contours. Id.

Section 4.12 of the Housing Contract states, "[t]he NDOC will handle all WDOC Offender grievances consistent with the NDOC grievance procedures." (Washington DOC's Mot. for Summ. J., Ex. 2.) It is undisputed Plaintiff exhausted his administrative remedies in Nevada. Having done so, Plaintiff was neither required to file a grievance nor seek an administrative remedy in Washington. Plaintiff's filing of an untimely grievance concerning a non-grievable issue in an improper forum did not trigger the PLRA's exhaustion requirement because Plaintiff already properly exhausted his administrative remedies in Nevada. The Court therefore will deny Washington DOC Defendants' motion for summary judgment on this ground.

**C. Eleventh Amendment**

Nevada Defendants argue the Eleventh Amendment bars Plaintiff's claims against Defendants in their official capacities because Defendants are state officials. Plaintiff did not respond to this argument.

States and entities that are "'arms of the State for Eleventh Amendment purposes'" are not "'persons'" within the meaning of § 1983. Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989)). Because a suit against a state official in his official capacity is equivalent to a suit against the state itself, the Eleventh Amendment bars suits against state

17

officials in their official capacities.  <u>Id.</u>  The only exception is a suit for prospective

injunctive relief.  <u>Id.</u>  The Eleventh Amendment does not bar claims against state officials

in their personal capacities.  <u>Pena v. Gardner</u>, 976 F.2d 469, 472 (9th Cir. 1992).

Plaintiff brings suit against all Defendants in both their official and personal

capacities.  (Compl. at ¶¶ 2-17.)  All remaining Defendants are state employees.  (Nevada

Defs.' Ans. at ¶¶ 2-9.; Washington DOC Defs.' Ans. at ¶¶ 15-17.)  The Eleventh

Amendment bars Plaintiff's claims for damages against Defendants in their official

capacities, and Defendants therefore are entitled to summary judgment on claims against

Defendants in their official capacities.  Plaintiff's claims against Defendants in their

personal capacities are not barred.

### D.  42 U.S.C. § 1983

Under Title 42 U.S.C. § 1983:

> Every person who, under color of [law] . . . subjects, or causes to be
> subjected, any citizen of the United States . . . to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law . . . or other
> proper proceeding for redress.

Accordingly, to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two elements:

(1) the defendant must be a person acting under color of state law; and (2) his conduct must

have deprived the plaintiff of rights, privileges or immunities secured by the Constitution or

laws of the United States.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  All remaining

Defendants concede they acted under color of state law with respect to Plaintiff's

allegations.  (Nevada Defs.' Ans. [Doc. #25] at 5; Washington DOC Defs.' Ans. [Doc. #28]

at 5.)

### 1.  Personal Participation

Defendants Crawford, Schomig, McBurney, Kukoloia, Sims, Burson, King,

Miller, Earley, and Bailey move this Court to grant judgment as a matter of law with regard

to Plaintiff's claims because they did not personally participate in the alleged deprivation of

Plaintiff's rights, as § 1983 requires. Plaintiff responds that all Defendants personally participated.

"Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)). An "official must play a personal role in the constitutional deprivation to be liable." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). However, a supervisor may be liable where either (1) he was personally involved in the alleged constitutional deprivation; or (2) a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation. Hansen, 885 F.2d at 646. Additionally, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Id. (citing Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987)).

### a. Jackie Crawford

Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, Defendant Crawford is entitled to judgment as a matter of law. Plaintiff fails to raise a genuine issue of material fact regarding Defendant Crawford's personal participation in depriving Plaintiff of his rights. Though Crawford was the Director of HDSP at all relevant times, Plaintiff's only allegation against Crawford is that as the director, she "is overseeing everything." (Nevada Defs.' Mot. for Summ. J., Ex. A, Shilling Dep. at 67.) Plaintiff has not presented evidence raising a genuine issue of material fact that Crawford had any involvement with his situation aside from his allegation that he wrote letters to her regarding his request for a kosher diet and received no response. (Id. at 68.) No evidence in the record supports that Crawford was involved in determining whether Plaintiff qualified for a religious diet or that she participated in the decision to offer Plaintiff a

19

transfer to ESP. Because Plaintiff does not raise a genuine issue of material fact that Crawford was personally involved in the alleged violation, or that there exists a sufficient causal connection between her supervisory role and the alleged violation, Defendant Crawford is entitled to summary judgment.

### b. James Schomig

Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, Defendant Schomig is entitled to summary judgment on the basis of a lack of personal participation. At all relevant times Schomig was employed by the Nevada DOC as the Warden of HDSP. (Nevada Defs.' Ans. at ¶ 3.) The only evidence Plaintiff offers to show personal participation is that he spoke to Schomig about his dietary requests when he encountered Schomig informally, during Schomig's walks through the prison. (Nevada Defs.' Mot. for Summ. J., Ex. A, Shilling Dep. at 71.) Alone, these informal encounters are insufficient to raise a genuine issue of fact as to whether Schomig played any personal role in the alleged deprivation of Plaintiff's rights. Defendant Schomig therefore is entitled to summary judgment.

### c. Charles McBurney

Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, Defendant McBurney is not entitled to summary judgment. At all relevant times, McBurney was employed by the Nevada DOC as the Associate Warden of Operations at HDSP. (Nevada Defs.' Ans. at ¶ 4.) At his deposition, Plaintiff testified he had frequent contact with McBurney regarding his dietary requests. (Nevada Defs.' Mot. for Summ. J., Ex. A, Shilling Dep. at 72-73.) Additionally, Plaintiff testified McBurney informed Plaintiff that McBurney personally arranged for Plaintiff's transfer to ESP. (Id.) Because Plaintiff has raised a genuine issue of material fact that McBurney personally participated in offering Plaintiff a choice between a kosher diet and a transfer, the Court will deny Defendant McBurney's motion for summary judgment.

### d. William Kukoloia

Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, Defendant Kukoloia is not entitled to summary judgment. At all relevant times, Kukoloia was a correctional caseworker specialist employed by Nevada DOC. (Nevada Defs.' Ans. at ¶ 5.) At his deposition, Plaintiff testified that Kukoloia was the caseworker to whom he was assigned and that Plaintiff dealt with Kukoloia on a regular basis regarding his dietary requests. (Nevada Defs.' Mot. for Summ. J., Ex. A, Shilling Dep. at 76.) Kukoloia responded to Plaintiff's grievances by informing him that HDSP does not offer kosher diets. (Id., Ex. A., Shilling Dep. at 77; Shilling Decl. and Exs. attached thereto, Ex. 24.) Further, Plaintiff has presented evidence raising a genuine issue of material fact that Kukoloia was personally involved in the decision to attempt to transfer Plaintiff to ESP as a means to accommodate his kosher diet request. (Shilling Decl. and Exs. attached thereto, Ex. 24.) For these reasons, the Court will not grant Kukoloia's motion for summary judgment on this basis.

### e. Martha Sims

Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, Defendant Sims is not entitled to summary judgment. At all relevant times, Sims was employed by Nevada DOC as the Associate Warden of Programs. (Nevada Defs.' Ans. at ¶ 6.) At his deposition, Plaintiff testified that Sims responded to his grievances regarding his dietary requests. (Nevada Defs.' Mot. for Summ. J., Ex. A, Shilling Dep. at 78; Shilling Decl. and Exs. attached thereto, Ex. 24.) Sims approved the grievance responses that denied Plaintiff's requests for a kosher diet. (Shilling Decl. and Exs. attached thereto, Ex. 24.) Sims also was involved in the decision to transfer Plaintiff to ESP rather than offer him a kosher diet at HDSP. (Id.) Because Plaintiff has presented evidence raising a genuine issue of material fact that Sims personally participated in actions and decisions denying Plaintiff a kosher diet, and offering him the choice between a kosher diet and a

transfer, the Court will deny Sims' motion for summary judgment on this ground.

### f.  Cheryl Burson

Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, Defendant Burson is not entitled to summary judgment.  At all relevant times, the Nevada DOC employed Burson as a caseworker.  (Nevada Defs.' Ans. at ¶ 7.)  Burson responded to Plaintiff's grievances by informing Plaintiff of a possible transfer to ESP. (Nevada Defs.' Mot. for Summ. J., Ex. A, Shilling Dep. at 79.)  Burson also responded to Plaintiff's grievances by indicating that the proffered transfer to ESP resolved Plaintiff's requests for a kosher diet.  (Shilling Decl. and Exs. attached thereto, Ex. 24.)  Because Plaintiff has presented evidence raising a genuine issue of material fact that Burson personally participated in actions and decisions denying Plaintiff a kosher diet, and offering him the choice between a kosher diet and a transfer, the Court will deny Burson's motion for summary judgment.

### g.  Clarence King

Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, Defendant King is not entitled to judgment as a matter of law.  Plaintiff has raised a genuine issue of material fact regarding King's involvement in the decision to deny Plaintiff kosher meals.  As a food services manager, King did not participate in decisions regarding Plaintiff's religious qualifications; he instructed Plaintiff as to the procedure he was required to undertake to become approved for a religious meal.  (Nevada Defs.' Mot. for Summ. J., Ex. A, Shilling Dep. at 81.)  Plaintiff states that King agreed to order kosher meals when King received the appropriate paperwork from the chaplain.  (Id. at 81-82.) Additionally, caseworkers and the chaplain forwarded Plaintiff's dietary requests to King. (Shilling Decl. and Exs. attached thereto, Ex. 24.)  However, King consistently informed Plaintiff's caseworkers that HDSP does not provide kosher diets.  (Id.)  Finally, evidence in the record supports an inference that King was responsible for determining that HDSP does

not offer a kosher diet because caseworkers asked King if HDSP would provide Plaintiff

with a kosher diet. (Id.) Because Plaintiff has raised a genuine issue of material fact as to

King's personal participation in the decision not to provide kosher diets at HDSP,

Defendant King is not entitled to judgment as a matter of law with regard to Plaintiff's

claims against King on the basis that he did not personally participate.

### h. James Miller

Viewing the evidence in the light most favorable to Plaintiff, the non-moving

party, Defendant Miller is not entitled to summary judgment. At all relevant times, Miller

was the Washington Department of Corrections' Corrections Counselor. (Washington

DOC Defs.' Mot. for Summ. J., Ex. 3, Miller Decl.) Miller was involved in the decision to

give Plaintiff the choice of foregoing a kosher diet or transferring to ESP. (Id.) Miller met

personally with Plaintiff regarding a possible transfer. (Id.) During this meeting, Miller

"clearly and unequivocally informed" Plaintiff that he could receive a kosher diet only if he

transferred to ESP. (Id.) Also during this conversation, Miller, along with Defendants

Bailey and Earley, inquired into Plaintiff's religious beliefs, asking him if his mother was

Jewish or if he had converted. (Nevada Defs.' Mot. for Summ. J., Ex. A, Shilling Dep. at

85.) Because Plaintiff has presented evidence raising a genuine issue of material fact that

Miller participated in determining if and how the prison might accommodate Plaintiff's

religious beliefs, Defendant Miller is not entitled to judgment as a matter of law on the basis

of lack of personal participation.

### i. Ethan Earley

Viewing the evidence in the light most favorable to Plaintiff, the non-moving

party, Defendant Earley is not entitled to summary judgment. At all relevant times, Earley

was the Washington Department of Corrections' Caseworker at HDSP. (Washington DOC

Defs.' Mot. for Summ. J., Ex. 5, Earley Decl.) Earley was involved in the decision to deny

Plaintiff a kosher diet at HDSP. (Id., Ex. 5.) He also was involved in giving Plaintiff the

23

choice of foregoing a kosher diet or transferring to ESP. (Id., Ex. 5, Attach. B.) Earley met personally with Plaintiff regarding a possible transfer. (Id.) During the meeting, Earley, along with Defendants Bailey and Miller, inquired into Plaintiff's religious beliefs, asking him if his mother was Jewish or if he had converted. (Nevada DOC Defs.' Mot. for Summ. J., Ex. A, Shilling Dep. at 85; Washington DOC Defs.' Mot. for Summ. J., Ex. 5, Attach. B.) Earley concluded that Plaintiff does not meet the Nevada DOC's "criteria to be recognized as Jewish" and thus Nevada DOC is not required to provide Plaintiff with a kosher diet. (Washington DOC Defs.' Mot. for Summ. J., Ex. 5, Attach. B.) Because Plaintiff has presented evidence raising a genuine issue of material fact that Earley participated in determining if and how the prison might accommodate Plaintiff's requests for religious accommodations, Defendant Earley is not entitled to judgment as a matter of law for lack of personal participation.

### j.  David Bailey

Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, Defendant Bailey is not entitled to summary judgment. At all relevant times, Bailey was the Washington Department of Corrections' On-Site Contract Manager in Nevada. (Id., Ex. 4, Bailey Decl.) Bailey was responsible for ensuring contract compliance. (Id.) Bailey was involved in denying Plaintiff a kosher diet at HDSP and giving Plaintiff the choice of foregoing a kosher diet or transferring to ESP. (Id.; Washington DOC Defs.' Mot. for Summ. J., Ex. 5, Attach. B.) These decisions were reached in meetings at which Bailey was an attendee, and via email communications between Defendants Bailey, Earley, and Miller. (Washington DOC Defs.' Mot. for Summ. J., Ex. 5, Attach. B.) In addition, Bailey, along with Earley, met personally with Plaintiff regarding a possible transfer. (Id.) Because Plaintiff presented evidence raising a genuine issue of material fact that Bailey participated in determining if and how the prison might accommodate Plaintiff's requests for a religious diet, Defendant Bailey is not entitled to judgment as a matter of law for lack

of personal participation.

## 2. Free Exercise of Religion

Defendants move this Court to grant summary judgment with regard to Plaintiff's free exercise claims. Defendants argue Plaintiff does not sincerely hold his professed religious beliefs, and even if he did, Defendants' offer to transfer Plaintiff to another facility to obtain a kosher diet constitutes a reasonable accommodation and is reasonably related to penological interests. Plaintiff responds that failure to provide a kosher diet at HDSP violates his free exercise rights under the First Amendment and is not reasonably related to penological interests.

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987). However, "[t]he free exercise right . . . is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).

A religious claim must satisfy two requirements to merit protection under the free exercise clause of the First Amendment: (1) the claimant's belief must be "sincerely held;" and (2) "the claim must be rooted in religious belief, not in purely secular philosophical concerns." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (citations and quotations omitted). To prove a free exercise violation, the plaintiff must demonstrate the defendants burdened the practice of his sincerely held religious beliefs "by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (citing Turner, 482 U.S. at 89).

///

25

### a. Free Exercise Protection

To be afforded free exercise protection, the plaintiff must have a religious belief that is sincerely held. <u>Malik</u>, 16 F.3d at 333. The belief must be sincerely held, as the First Amendment does not protect "'so-called religions which . . . are obviously shams and absurdities and whose members are patently devoid of religious sincerity.'" Callahan v. Woods, 658 F.2d 679, 683 (9th Cir. 1981) (quoting Theriault v. Carlson, 495 F.2d 390, 395 (5th Cir. 1974)). Scrutiny of a prisoner's sincerity is often essential in "differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984). Prison authorities are not obligated to provide a special diet if an inmate is not sincere in his religious beliefs. McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987). Whether a belief is sincerely held is a question of fact, generally not appropriately decided in a motion for summary judgment. <u>See</u> <u>Murphy v. Mo. Dep't of Corr.</u>, 372 F.3d 979, 983 (8th Cir. 2004); <u>Mosier v. Maynard</u>, 937 F.2d 1521, 1526 (10th Cir. 1991); <u>Patrick</u>, 745 F.2d at 159.

In determining whether a prisoner's beliefs are entitled to protection, however, courts may not inquire into their truth. <u>Callahan</u>, 658 F.2d at 687 (citing <u>United States v. Ballard</u>, 322 U.S. 78, 87 (1944)). Nor may the court limit protected beliefs to those that are shared by all members of a religious sect. <u>Id.</u> at 686 (quoting <u>Thomas v. Review Bd. of the Indiana Employment Sec. Div.</u>, 450 US 707, 715-16 (1981)). Moreover, a claimant need not be a member of a particular organized religious denomination to show sincerity of belief. See Frazee v. Ill. Dep't of Employment Sec., 489 U.S. 829, 834 (1989); Love v. Reed, 216 F.3d 682, 688-89 (8th Cir. 2000). The inquiry is "not definitional, but devotional," and evaluates whether the beliefs are "held with the strength of traditional religious convictions." United States v. Ward, 989 F.2d 1015, 1018 (9th Cir. 1992). "[W]hile practice or nonpractice of a particular tenet of a religion may be relevant to sincerity, it is not conclusive." Mosier, 937 F.2d at 1523 (citing Reed v. Faulkner, 842 F.2d

26

960, 963 (7th Cir. 1988)).

For example, the United States Court of Appeals for the Second Circuit held that it was error to rely on a rabbi's assessment to determine that an inmate was not "in fact Jewish." Jackson v. Mann, 196 F.3d 316, 320 (2d Cir. 1999). The district court in that case had granted summary judgment to prison officials after concluding that an inmate was not Jewish according to the religion's standards, based on a rabbi's statement that "a Jew is one who was born Jewish or has formally converted." Id. Doing so "erroneously substituted the objective 'accuracy' of [the inmate's] assertion that he was Jewish for the correct test–whether [his] beliefs are 'sincerely held.'" Id. The inmate had produced sufficient evidence to raise a genuine issue of material fact as to his sincerity by offering documentation that listed his religious preference as Jewish, showing participation in other kosher meal programs, demonstrating that he had not eaten for several days to avoid eating non-kosher food, and providing an affidavit from his mother, stating she had raised him according to the Jewish faith and dietary laws. Id.

Viewing evidence in the light most favorable to Plaintiff, Plaintiff has raised a genuine issue of material fact as to whether he holds a sincere belief in Orthodox Judaism. Specifically, he repeatedly professed his religion to be Orthodox Judaism. He also stated that he attempted to avoid consuming non-kosher items. (Nevada Defs.' Mot. for Summ. J., Ex. A, Shilling Dep. at 32-35.) Defendants have offered evidence that may reflect negatively on Plaintiff's sincerity. For example, Plaintiff changed his religious preferences several times within several months. (Washington DOC Defs.' Mot. for Summ. J., Ex. 7, Attachs. A, B, C.) Additionally, during Plaintiff's incarceration at HDSP, Plaintiff purchased a substantial amount of non-kosher food from the inmate store. (Nevada DOC Defs.' Mot. for Summ. J., Ex. A, Shilling Dep. at 33-36; Ex. 6 to Dep.) However, because there is a genuine issue as to the sincerity of Plaintiff's religious beliefs, the Court will deny Nevada and Washington DOC Defendants' motion for summary judgment on this ground.

### b. Free Exercise Violation

Defendants argue they have not violated Plaintiff's free exercise rights because accommodating a kosher diet at HDSP would be costly and disruptive and they accommodated Plaintiff by offering him a transfer to a facility that provides kosher meals. Plaintiff responds that failing to offer him a kosher diet at HDSP violated his rights.

To rise to the level of a constitutional violation, the interference must be "'more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" Freeman, 125 F.3d at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987)). In the prison context, a prison's impingement of an inmate's free exercise rights does not violate the Constitution if it is reasonably related to legitimate penological interests. Id. at 736. The Court considers four factors in determining whether the conduct was reasonable: whether the regulation has a logical connection with a legitimate government interest, whether alternative means exist to exercise the asserted right, the impact accommodation of the asserted right will have on inmates, guards, and prison resources, and the availability of alternatives. Resnick v. Adams, 348 F.3d 763, 769-70 (9th Cir. 2003) (citing Turner, 483 U.S. at 89-90).

The first factor requires "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." Id. (quotation omitted). Prisons have a legitimate interest in providing a simplified food service as opposed to one that would present administrative difficulties. Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993). Because not providing special diets is logically connected to this interest, this factor favors the government. Id.

The second factor examines whether the inmate has "'alternative means of exercising the right that remain open.'" Resnick, 348 F.3d at 769 (quoting Turner, 483 U.S. at 89-90). Though this inquiry typically focuses on the issue of whether the inmate has been denied all means of religious expression, the United States Court of Appeals for the

28

Ninth Circuit has recognized a distinction between "a practice which is a positive expression of a belief and a commandment which the believer may not violate at the peril of his soul." Ward, 1 F.3d at 878. Alternative means are relevant if the prison seeks to limit ways of expressing belief. Id. However, "requiring a believer to defile himself" by requiring him to do something forbidden by his conscience is another matter. Id. When the right at issue involves the forced disobedience of a religious law, this factor favors the inmate. See id.

The third factor concerns the impact the accommodation would have on other inmates, the guards, and prison resources. Resnick, 348 F.3d at 770 (citing Turner, 483 U.S. at 89-90). Though it is clear that providing a special meal for one person would entail some expense and disruption to prison culinary services, analysis of this factor requires factual evidence of the degree of any disruption and costs involved. Ward, 1 F.3d at 878. A prison official's assessment may be relevant and entitled to deference, but bare assertion alone cannot tip this factor in the prison's favor. Id. at 878-89. Generally, absent evidence of the magnitude of the financial impact of the accommodation, or that prison officials explored the possibility of accommodating the inmate, a court cannot determine whether this factor favors the inmate or the prison. Id.

Finally, the fourth factor requires consideration of any "obvious, easy" alternatives that would accommodate the inmate at de minimis cost to the prison. Resnick, 348 F.3d at 770 (citing Turner, 483 U.S. at 89-90). The absence of ready alternatives is evidence of a regulation's reasonableness, while the existence of alternatives is evidence of unreasonableness. Ward, 1 F.3d at 879. Like the third factor, this analysis also requires facts specific to the circumstances to avoid mere speculation about the existence of alternatives or their cost. Id.

Reviewing these factors, the first factor favors Defendants because not providing a special diet for one inmate is rationally related to the penological interest of maintaining a

29

simplified food system with fewer administrative complications. The second factor favors Plaintiff because the religious exercise at issue concerns Plaintiff's ability to obey a religious law rather than a positive means of religious expression. The third and fourth factors favor Defendants because Defendants offered Plaintiff the alternative of transferring to ESP, where a kosher diet program already had been established. Neither party presented evidence of any other alternatives. Common sense dictates that providing one inmate with a special meal at HDSP would cost more than transferring Plaintiff to a facility with an existing kosher kitchen. Moreover, transferring Plaintiff to ESP represents an easy and obvious accommodation which Defendants offered, but Plaintiff refused. While the existence of an easy and obvious accommodation usually favors the inmate, here, Defendants recognized this alternative and offered it to Plaintiff.

Accommodating Plaintiff's requests for a kosher diet by transferring Plaintiff to a higher security prison does not impermissibly burden Plaintiff's constitutional rights. See McKune v. Lile, 536 U.S. 24, 45-48 (2002). Though the transfer may have limited Plaintiff's opportunities to work and retain a wider variety of possessions, such changes are not severe enough to implicate constitutional protection. "[T]he decision where to house inmates is at the core of prison administrators' expertise." Id. at 39. The transfer of an inmate or change of incarceration conditions does not implicate a liberty interest, even if the transfer or change results in loss of access to beneficial programs, personal possessions, privileges, and visitation rights. Id. at 29. Although these precepts derive from Due Process litigation, they "underscore the axiom that, by virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." Id. at 40.

It is error to view a change in a prisoner's condition in reference to some "baseline" condition the prisoner may currently enjoy because the prisoner is not entitled to that baseline. Id. at 46. Prisoners equal in many respects may end up in units of varying

30

security levels based on administrative considerations; thus, any reward-penalty distinction is often illusory in the prison context and it is improper to base the adverseness of an action on such determinations. Id. at 45-48 (holding that a transfer from a medium to maximum security facility that involved the loss of a variety of prison privileges did not impermissibly burden a prisoner's Fifth Amendment right to refrain from self-incrimination or constitute compulsion in the context of self-incrimination).

Plaintiff has failed to raise a genuine issue of material fact that Defendants violated his free exercise rights in denying him a kosher meal at HDSP where Defendants offered to transfer Plaintiff to another facility that served kosher meals. The Court will therefore grant Defendants' motion for summary judgment for Plaintiff's free exercise claim under § 1983.

### 3. Equal Protection

Washington and Nevada Defendants move this Court to grant summary judgment with regard to Plaintiff's claims under the Equal Protection Clause. Defendants argue they did not violate Plaintiff's equal protection rights by requiring him to qualify for a religious diet or by requiring him to prove his Jewish heritage. Plaintiff does not address this issue in his response.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV. It requires "that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "[T]he State must treat all religions equally, and not favor one over another." Employment Div., Dep't of Human Resources of Or. v. Smith, 494 U.S. 872, 918 (1990).

Prison officials may not discriminate against particular religions. Id. An inmate must have a "'reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners . . . .'" Freeman, 125 F.3d at 737 (quoting Cruz v. Beto, 405 U.S.

319, 321-22 (1972) (per curiam)).  Equal protection requires that prisons make a good faith accommodation of prisoners' rights in light of practical considerations, but does not mandate that prisons provide identical accommodations to different faiths, regardless of circumstances or how many inmates practice it.  Id.; see also Cruz, 405 U.S. at 322 n.2. Religious groups must be similarly situated to implicate equal protection rights; if the burden imposed by one inmate's  proposed religious diet exceeds the burden imposed by another inmate's religious diet, those inmates are not similarly situated so as to sustain an equal protection claim.  DeHart v. Horn, 390 F.3d 262, 272 (3d Cir. 2004).

To defeat summary judgment, a plaintiff "'must set forth specific facts showing that there is a genuine issue' as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths" and that "officials intentionally acted in a discriminatory manner."  Freeman, 125 F.3d at 737.  In some situations, proof of discriminatory intent may be inferred from the mere fact of difference in treatment.  Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1112 (9th Cir. 1991) (citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)).

Viewing all evidence in the light most favorable to Plaintiff, the non-moving party, the Court will grant Defendants' motion for summary judgment on Plaintiff's equal protection claims.  First, prison officials did not violate Plaintiff's equal protection rights by requiring him to qualify for a religious diet.  HDSP's prison policy requires that those requesting a religious diet follow the procedure of completing paperwork and an interview with the prison chaplain.  Plaintiff was required to complete this procedure if he wished to pursue a religious diet.  Plaintiff offers no evidence that inmates claiming non-Judaic religious preferences were not subject to a similar process of religious evaluation.  Because there is no evidence that Defendants treated some religions differently from others in this respect, this process does not run afoul of the Equal Protection Clause.

///

Additionally, Plaintiff has not offered evidence of how Defendants treated him differently from similarly situated inmates with regard to requested religious accommodations. Plaintiff states that the prison accommodated the dietary restrictions of several other religions but did not accommodate him. Plaintiff offers no evidence that those professing other religions were similarly situated–that they had similarly burdensome dietary restrictions, a similar number of adherents, or were otherwise relevantly similar. Moreover, Plaintiff offers no specific facts as to how the prison accommodated others, except to state that some prisoners were given vegetarian diets. Plaintiff does not raise a genuine issue of material fact as to whether prison officials treated him differently from others who were similarly situated.

Finally, Plaintiff has not offered evidence that prison officials acted in an intentionally discriminatory manner. Plaintiff alleged that prison officials racially discriminated against him by requiring him to prove his Jewish heritage as a condition of receiving a kosher diet. It is undisputed that prison officials inquired as to whether Plaintiff is of Jewish heritage or converted to Judaism to determine if Plaintiff was Jewish according to the tenets of Orthodox Judaism. However, Plaintiff has not offered evidence or specific facts supporting that he was denied a kosher diet based on his race. Prison officials offered Plaintiff a kosher diet at ESP despite any doubts they may have entertained regarding the sincerity of Plaintiff's religious beliefs. Moreover, prison officials did not provide other Jewish inmates with a kosher diet while refusing to provide one to Plaintiff. While intent may, in some instances, be inferred from a difference in treatment, the fact that Defendants offered Plaintiff a kosher diet at another facility does not support such an inference in this case. Plaintiff does not raise a genuine issue of material fact as to whether prison officials acted in an intentionally discriminatory manner.

Plaintiff has failed to raise a genuine issue of material fact that Defendants violated his equal protection rights. The Court therefore will grant Nevada and Washington

DOC Defendants' motions for summary judgment as to Plaintiff's equal protection claims under § 1983.

**E.  Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") Claim**

In his Opposition, Plaintiff asserts a RLUIPA claim.  In their Replies, Nevada and Washington DOC Defendants argue that Plaintiff did not raise a RLUIPA claim in his Complaint.  Nevada Defendants further argue that even if Plaintiff properly pled a RLUIPA claim, they are entitled to summary judgment on that claim because requiring Plaintiff to transfer to ESP to receive a kosher diet does not violate RLUIPA.

Courts have a duty to construe pro se pleadings and motions, including complaints, liberally.  Bernhardt v. Los Angeles County, 339 F.3d 920, 924 (9th Cir. 2003).  Courts should treat pro se litigants with "great leniency" when evaluating compliance with technical rules and must "afford [a pro se] plaintiff the benefit of any doubt."  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988); Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986).  This is especially true with respect to civil rights litigation.  Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987).  A party's failure to name a specific statute in his complaint is not fatal to his case; pleading the facts underlying the claim is sufficient.  Sagana v. Tenorio, 384 F.3d 731, 736-37 (9th Cir. 2004) (citing Cabrera v. Martin, 973 F.2d 735, 745 (9th Cir. 1992)).  A plaintiff "'need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case.'"  Id. at 737 (quoting Am. Timber & Trading Co. v. First Nat'l Bank of Or., 690 F.2d 781, 786 (9th Cir. 1982)); see also Johnson v. Mateer, 625 F.2d 240, 242 (9th Cir. 1980) (holding that failure to articulate the bases for a claim at the pleading stage should not be fatal).

///

///

34

RLUIPA provides, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person -- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2) (2000).  Claims brought under RLUIPA are subject to a strict scrutiny standard, which replaces the Turner reasonableness standard employed in cases involving constitutional violations.  See Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004).

RLUIPA broadly defines "religious exercise" as "'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'"  Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005) (quoting 42 U.S.C. § 2000cc-2(a)).  RLUIPA is "to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs."  Id. at 995 (citing 42 U.S.C. § 2000cc-3(g)).  The plaintiff bears the initial burden of demonstrating a prima facie claim that the prison's policies or actions constitute a substantial burden on the exercise of his religious beliefs.  Id. at 994.  If the plaintiff meets this burden, the prison bears the burden of persuasion to prove that the substantial burden both furthers a compelling government interest and employs the least restrictive means.  Id. at 995.

As is the case with a free exercise claim, the plaintiff's belief must be sincere.  Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005).  The Act permits "inquiry into the sincerity of a prisoner's professed" religious beliefs; prison officials may question whether an asserted belief is "authentic."  Id.  Consistent with the free exercise claim discussed previously, the Court will view the facts in the light most favorable to Plaintiff and assume that Plaintiff's belief is sincerely held.

///

Plaintiff did not mention RLUIPA in his Complaint. However, prior to filing his Complaint, Plaintiff filed a motion for a preliminary injunction (Doc. #2) which stated that Defendants' actions violated RLUIPA. Additionally, Plaintiff's Complaint pleads facts that support a RLUIPA claim. The same facts and events support both Plaintiff's § 1983 free exercise claim and a RLUIPA claim.

The Court will construe Plaintiff's Complaint liberally to include a RLUIPA claim even though Plaintiff failed specifically to name RLUIPA in his Complaint. However, because Plaintiff's Complaint did not specifically plead a RLUIPA claim, the Court will grant Defendants leave to file a motion for summary judgment on the RLUIPA claim within twenty (20) days of the date of this Order. Plaintiff may file an opposition within fifteen (15) days of Defendants' motion. Defendants may file a reply within seven (7) days of Plaintiff's opposition.

## IV.     CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion to Strike Pursuant to F.R.C.P. 56(e) Defendants' Exhibits and Testimony in Support of Their Motions for Summary Judgment (Doc. #166) is hereby DENIED.

IT IS FURTHER ORDERED that State of Nevada Defendants' Motion to Strike Plaintiff's Response to Defendants' Reply (Doc #162) is hereby DENIED in that the Court will not strike the Response, but the Court will disregard it for purposes of this Order.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Nevada Defendants' Additional Testimony and Discovery Documents (Doc. #177) is hereby DENIED in that the Court will not strike the Additional Testimony and Discovery Documents, but the Court will disregard it for purposes of this Order.

IT IS FURTHER ORDERED that Washington DOC Defendants' Motion for Summary Judgment (Doc # 144) is hereby GRANTED in part and DENIED in part. Washington DOC Defendants' Motion for Summary Judgment is GRANTED with respect

to Plaintiff's § 1983 claims for First and Fourteenth Amendment violations and to all Defendants in their official capacities. The Motion is DENIED with respect to Plaintiff's RLUIPA claim against remaining Defendants Earley, Miller, and Bailey.

IT IS FURTHER ORDERED that State of Nevada Defendants' Motion for Summary Judgment (Doc. #145) is GRANTED in part and DENIED in part. State of Nevada Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's § 1983 claims for First and Fourteenth Amendment violations and to all Defendants in their official capacities. The Motion is also GRANTED for all claims against Defendants Crawford and Schomig. The Motion is DENIED with respect to Plaintiff's RLUIPA claim against remaining Defendants McBurney, Kukoloia, Sims, Burson, and King.

IT IS FURTHER ORDERED that Plaintiff's Motion to Extend Time (Doc. #149) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendants may file motions for summary judgment regarding Plaintiff's RLUIPA claim within twenty (20) days of the date of this Order; Plaintiff may file an opposition within fifteen (15) days of Defendants' motion; and Defendants may file a reply within seven (7) days of Plaintiff's opposition.

DATED: September 21, 2007.

_____
PHILIP M. PRO
United States District Judge